### Bud Teel v. State.

#### No. 1028.   Decided October 25, 1911.

**1.—Assault to Murder—Bills of Exception—Practice on Appeal.**

Where there are no bills of exception as to special charges requested and refused, the defendant's complaint to the charge of the court being of a general character, the same could not be considered on appeal; nor could the complaint of the overruling of appellant's motion for a continuance be considered in the absence of a bill of exceptions.

**2.—Same—Charge of Court—Self-Defense.**

Where, upon trial of assault to murder, the evidence did not raise the issue of self-defense, there was no error in the court's failure to charge thereon.

**3.—Same—Charge of Court—Aggravated Assault—Practice on Appeal.**

Where, upon trial of assault to murder, the court properly submitted the law on murder, malice, deadly weapon, intent to kill and aggravated assault, general complaints to the charge of the court, not pointing out any specific error, can not be considered on appeal.

Appeal from the District Court of Harden. Tried below before the Hon. L. B. Hightower.

Appeal from an assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*W. S. Parker,* for appellant.—On the question of the court's failure to charge on self-defense: Bell v. State, 17 Texas Crim. App., 538.

*C. E. Lane,* Assistant Attorney-General, for the State,

PRENDERGAST, Judge.—The appellant was indicted for an assault to murder Sam Bishop. He was convicted and his punishment fixed at three years confinement in the penitentiary.

It is not necessary to make an extended statement of the evidence. Briefly, the facts are that the assaulted party, Sam Bishop, went into a saloon where the appellant and others were. Bishop bought a quart of whisky from the saloonkeeper, and as soon as he ordered it the appellant said to him: "You are going to buy me a drink, too, ain't you?" He replied that he was not. The appellant insisted that he was. As soon as Bishop got the whisky he left the saloon. The appellant followed him, and insisted upon his giving him a drink, and when Bishop still refused the appellant announced to him that he intended to take the quart of whisky from him, and proceeded to attempt to do so, whereupon an altercation between the parties occurred, the appellant getting hold of the bottle, when Bishop thereupon jerked it away from him, struck him across the head with it and knocked him to his knees. Bishop then clasped the appellant around his body and called upon others who were approaching to come to him and prevent his hurting him, stating that he did not want to hurt the appellant and did not want the appellant to hurt him. Several persons came, among them the deputy sheriff, and separated the parties at the time. Bishop made no attempt at any time to strike or hurt the appellant further than to strike him with the bottle of whisky and knock him to his knees, and then catch him and hold him to prevent being hurt himself. After the deputy sheriff had the parties separated, they then talked about the matter some little bit and Bishop proposed to take them all back to the saloon and treat them, including the appellant and the deputy sheriff with some others. This altercation occurred some forty yards away from the saloon where the quart of whisky had been bought. Upon Bishop's invitation they all left the place where the first altercation had occurred, and started back to the saloon, the appellant with them. Apparently the matter between the parties had been amicably settled. The parties were walking somewhat abreast; the appellant, however, a little to the rear of some of the parties, but with one or two between him and Bishop. After walking in this way forty or fifty yards to the saloon, and when the deputy sheriff and some of the others and Bishop were in the act of stepping upon the sidewalk or gallery in front of the saloon going therein, the appellant suddenly and rapidly moved around the parties between him and Bishop, and without any provocation at all at the time, suddenly and unexpectedly stabbed Bishop with a knife, making a very deep and long cut from which Bishop suffered greatly, and was confined to his bed for more than a month. As soon as the appellant stabbed Bishop he ran and attempted to escape, but soon after stopped and was arrested.

The evidence clearly shows by all of the witnesses and of the appel-

lant himself that at the time the appellant stabbed Bishop, Bishop was neither doing nor saying anything to appellant, and apparently anticipated no trouble or assault by the appellant upon him.

The court correctly submitted a charge to the jury on assault with intent to kill, and on aggravated assault. He also submitted to the jury the question of adequate cause and the appellant's state of mind as to anger, rage, sudden resentment or terror caused by the previous assault of Bishop upon him.

There are no bills of exception or special charges asked and refused. By this motion for a new trial appellant complains, in a general way, of some claimed omissions and commissions of the court in the charge, and he also complains of the overruling of his motion for a continuance.

There is no bill of exceptions as to the overruling of the motion for continuance, and as this is the only way that question can be reviewed by this court, we can not and do not pass upon that question.

Another ground of complaint in the motion for new trial is that the court did not submit to the jury the issue of self-defense, which appellant claims was raised in the case, and that the verdict of the jury is contrary to the law and the evidence on that account. We have carefully gone over the statement of facts time and again, and are of the opinion that the question of self-defense is not raised by the evidence so as to require the court to charge on that subject; neither did appellant request any special charge on that subject at the trial.

The testimony of the appellant himself on cross-examination, which we suppose was intended by the appellant's contention to raise that question, is substantially as follows: He was asked if the lick on the head with the bottle made him mad, and he replied: "Well, I didn't laugh about it at all. Yes, sir, it made me sore—mad. As to whether that was the reason I stabbed him, well, there was something that was said. Because he hit me on the head with the bottle was not the reason I stabbed him, but something was said when I walked up—I did not understand what it was. As to whether I reached around and stabbed him, I said, 'Sam, you have not treated me right,' or something like that about hitting me with that bottle, and he said if I did not like it to help myself or something to that effect. I did not strike him but one lick. He never struck me at all the last time there at the gallery. As to my saying something to Mr. Parker awhile ago that while I was going over there and just before I stabbed him that I was not satisfied—Yes, sir, I was not satisfied about the way he treated me by hitting me with that bottle." In his direct examination on this same subject, he testified: "Just prior to the time the stabbing occurred, Sam said something or other, but I never understood what it was, and I said you never treated me right by hitting me with that quart of whisky, and he said, 'Well, help yourself,' and we both turned around. Yes, sir, he said help yourself, and when he said that he

turned around towards me and I went on towards him. As to whether I was anticipating he was going to do me injury at that time, why, I don't know hardly—I was surprised—I did not know what to think about it. Well, when he said the words, if I did not like it to help myself, we both just turned towards one another—we were kinder side and side like. I struck him on the side some place—left side. With reference to how long we had been clinched before I struck him, well, it all happened about the same time. He caught me with his right hand around me and his left went around my neck. I could not tell whether he had anything in his hand at that time—it looked as though he had his hand up and kinder doubled up, but I could not tell whether there was anything or not."

All of the other witnesses who testified, said, Bishop, the assaulted party, did nothing and said nothing to the appellant; that he did not make the slightest demonstration towards him with either hand, but that the appellant darted around the person or persons who were between him and Bishop, and just as Bishop was in the act of stepping up on the gallery, appellant stabbed him in the side and ran. The evidence did not call for any charge by the court on the question of self-defense.

The other questions attempted to be raised by appellant's motion for a new trial are, in substance, as follows:

"6. The court erred in that part of paragraph three of his charge to the jury wherein the court charges upon the issue of aggravated assault and defines 'assault and battery' rather than 'aggravated assault,' as the same is misleading, and the term 'aggravated assault' does not include the term 'assault and battery' nor does the court define in its charge the term assault and battery.

"7. The court erred in his general charge to the jury in failing to define the law governing manslaughter, in that the court, in his general charge to the jury in an assault to murder, should define murder and all the elements of murder.

"8. The court erred in its general charge to the jury in his definition of malice aforethought since the court had failed to charge upon the law of malice.

"9. The court erred in his general charge to the jury wherein he failed to charge upon the law of manslaughter as applicable to aggravated assault.

"10. The court erred in his general charge to the jury in failing to define the law of expressed or implied malice."

We have considered the court's charge, and find that it is a charge upon aggravated assault, substantially as defined by the statute. The court also defines a deadly weapon, and defines murder as the statute lays it down; also malice aforethought, and then properly submits to the jury whether or not the appellant is guilty of an assault with intent to kill, and also submits aggravated assault, and as stated above,

he also submits adequate cause, and gives the appellant the benefit thereof of the previous difficulty that occurred between them over the quart bottle of whisky.

Under the circumstances and the charge of the court as given, the complaints thereof by the appellant are too general to point out any specific error that would justify or authorize this court to reverse this case.

It is too well established to need citation of authority to show that when appellant attacks the court's charge, he must point out the specific errors in the charge in such a way that the court can pass thereon intelligently, otherwise there would be no such assignment as to authorize or justify the court to consider the general objections to the charge.

There being no reversible error in the record, the judgment is affirmed.

*Affirmed.*